Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7519 | **DATE** | 6/18/2004 |
| **CASE TITLE** | U.S.A. ex rel Villatoro vs. Kenneth R. Briley | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: We deny [1-1] the section 2254 petition for a writ of habeas corpus brought by petitioner Edgar Villatoro. This is a final and appealable order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | JUN 2 1 2004 | date docketed | 48 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. EDGAR VILLATORO, | ) ) ) |
| Petitioner, | ) ) No. 00 C 7519 |
| v. | ) ) Wayne R. Andersen |
| KENNETH R. BRILEY, Warden, | ) District Judge |
| Respondent. | ) ) |

**DOCKETED**
**JUN 2 1 2004**

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the petition of Edgar Villatoro for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we deny the petition for habeas corpus.

## BACKGROUND

Petitioner does not challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming his murder conviction. *People v. Villatoro*, No. 1-95-0417 (Ill. App. First. Dist. 1996). For purposes of federal habeas review, "a determination of a factual issue made by a *State* court shall be presumed to be correct." 28 U.S.C. § 2254(e). Accordingly, we will adopt the facts as our own.

The victim in this case, Herbert Gibson, was a 66-year-old homeless person. At a bench trial in the Circuit Court of Cook County, Sergeant Robert Stevens testified that on July 17, 1993 about 3:10 a.m., he went to the back of a shopping mall near 5235 North Broadway in Chicago and saw the victim lying on the ground. He spoke with Wanda Smith who lived near the scene and thereafter started looking for a man of Hispanic descent dressed in white clothing.

Fifty minutes later, Sergeant Stevens was at the intersection of Foster and Broadway

when he saw Petitioner, who was wearing white clothing, get up from a bench, look at the officer and run into a restaurant. Sergeant Stevens pursued him, but was unable to catch him. About 7:30 a.m., Sergeant Stevens saw Petitioner, who was now shirtless, with red marks on his shoes and pants. Sergeant Stevens asked Petitioner what was wrong because he was limping, and Petitioner said he had been involved in a fight and that he had injured his feet while kicking someone. Sergeant Stevens then placed Petitioner in custody.

Dr. Cynthia Porter performed the autopsy on the victim. She testified that the victim had an abrasion on the right side of his face and right ear. He had bleeding into the sclera, which is the white part of the eyes. He also had a bruise around his left eye and a large bruise on the left cheek and bruises on his shoulders. Internally, Dr. Porter found two subgaleal hemorrhages and a large subdural hematoma on the right side the brain. The victim also had a fracture of the chest plate and fractures of his ribs. Dr. Porter opined that the victim died as a result of multiple injuries sustained from blunt trauma, consistent with being kicked in the head and face. The tests performed on the victim were negative for alcohol and drugs. However, the victim died three days after being admitted to the hospital and had metabolized any alcohol by the time of the autopsy.

Assistant State's Attorney Brian Suth testified that on July 19, 1993, he interviewed Petitioner at the police station and then prepared a handwritten statement, which Petitioner signed. The handwritten statement was admitted into evidence. The statement indicated that in the late evening hours of July 16, 1993, Petitioner went into a liquor store. He then left and went into an alley to urinate and there he met a man. After Petitioner relieved himself, he and the other man shared a beer. The man then left, and the victim approached Petitioner and asked him for

2

money. Petitioner refused and the victim said something. Petitioner then beat the victim until he fell, and then Petitioner kicked him five times in the head. He stopped kicking the victim when the victim stopped moving. Petitioner stated that at no time did the victim threaten him or display a weapon.

For the defense, Aciz Rostamali testified that he knew the victim, whom he described as a "bum." Mr. Rostamali testified that the victim drank a lot and would cause problems with people and begin fights if people refused his requests for change.

Wanda Smith testified that she lived in an apartment near the scene, and on July 17, 1993 about 2:30 a.m., she heard what sounded like someone being beaten. She looked out the window and saw two men running away, one of whom had a "tail" on his hair while the other was wearing a hat. She could not tell their races. Ms. Smith testified that she called the police.

Petitioner testified that on July 14, 1993 he got paid and about 3:30 p.m., he and several women got some beer and drank on the south side of the city. Petitioner also consumed cocaine and marijuana. He then asked the women to drop him off near the public housing projects because he was drunk. The next morning he called his girlfriend who was mad at him and told him to move out of their apartment. Petitioner then continued drinking and passed out the following day.

Petitioner testified that when he awoke, he looked for a liquor store. There he met a man, and the two went into an alley and shared a beer. Petitioner walked further up the alley and there he encountered the victim who asked him for money and "lurched" at him. Petitioner pushed and slapped the victim, and the victim fell down. When the victim tried to push himself up, Petitioner thought he was going to come at him so he kicked him his face. The victim again went to get up,

3

and Petitioner kicked him two more times until he was motionless. Petitioner then panicked and left. He fell asleep near the sidewalk and when he awoke, someone had taken his jewelry and shirt. A policeman approached, and Petitioner was taken to the station and later to the hospital because he had hurt his foot.

Petitioner testified that after he was arrested, the police took him to the scene of the crime and forced him down the alley. He testified that the police became angry and punched him when he corrected their mistake about the location of the incident. Petitioner testified that the police told Petitioner that they had his footprints and made him stay at the police station on Sunday night in order for him to sober up. The next day, Petitioner gave a statement to the Assistant State's Attorney.

On January 12, 1995, following a bench trial, Petitioner was found guilty of first degree murder and sentenced to a prison term of forty years imprisonment. Petitioner appealed his conviction to the Illinois Appellate Court, First District, raising three arguments: 1) his conviction must be reduced to involuntary manslaughter because he was intoxicated at the time and, thus, his conduct was reckless rather than intentional; 2) his sentence of 40 years was an abuse of discretion because of his alcoholism and it was the victim's behavior that provoked the physical confrontation; and 3) he had no history of violence. On November 22, 1996, the Illinois Appellate Court affirmed the judgment of the Circuit Court of Cook County.

Petitioner next sought leave to appeal to the Illinois Supreme Court, arguing that the Appellate Court erred in rejecting his argument that his conduct could not be considered reckless and that they used the wrong standard in making their decision. Petitioner's petition for leave to appeal to the Illinois Supreme Court was denied on April 2, 1997.

4

On September 29, 1997, Petitioner filed a timely *pro se* petition for post-conviction relief. In his post-conviction petition, Petitioner raised five claims: 1) the trial court improperly denied him the opportunity to introduce evidence of gang crimes, which would have shown that an unknown gang member committed the fatal assault; 2) Petitioner's due process rights were violated because he was not proven guilty beyond a reasonable doubt; 3) the trial court and prosecution misstated the facts; 4) ineffective assistance of counsel because trial counsel failed to preserve grounds one and three and failed to call favorable witnesses; and 5) ineffective assistance of appellate counsel for failing to raise trial counsel's ineffective assistance. On December 15, 1997, the Circuit Court of Cook County denied the petition.

Petitioner appealed the denial of his post-conviction petition to the Illinois Appellate Court on January 5, 1998. On June 9, 1998, he also filed a petition for revestment in the Illinois Appellate Court, requesting that it revest the Circuit Court with jurisdiction to adjudicate an amended petition for post-conviction relief. Petitioner argued in that petition that fairness required him to present ineffective assistance of counsel claims to the Circuit Court. Attached to this petition was an amended post-conviction petition raising claims that he had not previously raised in his original post-conviction petition, as well as a Sixth Amendment claim. The Illinois Appellate Court denied Petitioner's request for revestment.

Petitioner acquired appellate counsel to handle the appeal of the denial of his post-conviction petition, but that counsel withdrew pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), asserting that there were no appealable issues resulting from the denial of Petitioner's post-conviction petition. The Appellate Court affirmed the judgment of the Circuit Court on March 30, 1999. Petitioner did not seek leave to appeal to the Illinois Supreme Court.

5

On May 11, 1999, Petitioner filed a second *pro se* post-conviction petition. In it, he raised all of the issues raised in his first post-conviction petition as well as the following additional issues: 1) the evidence presented was insufficient to support a claim of first degree murder; 2) the trial court erred in ruling that premeditation was not an essential element of first degree murder; 3) the prosecution failed to prove premeditation and specific intent beyond a reasonable doubt; 4) the Illinois statute defining first degree murder was unconstitutional; 5) the State failed to place him at the scene of the crime; and 6) the trial court failed to assign Petitioner counsel during the pendency of his post-conviction petition. In addition, Petitioner raised ineffective assistance of counsel claims. In arguing that he received ineffective assistance of trial counsel, Petitioner claims that counsel was ineffective for failing: 1) to investigate; 2) to suppress an incriminating statement; 3) to discover DNA evidence; 4) to advance a theory of voluntary intoxication; and 5) to properly preserve the record. In arguing that he received ineffective assistance of appellate counsel, Petitioner claims that appellate counsel failed to: 1) raise trial counsel's ineffectiveness to preserve the record; and 2) advance meritorious arguments on appeal.

On June 24, 1999, this successive post-conviction petition was denied with no explanation from the Circuit Court. Once again, Petitioner was appointed appellate counsel to represent him in connection with the denial of the successive petition, and once again that counsel moved to withdraw from the appeal. In his motion to withdraw, appellate counsel maintained that there were no appealable issues and, further, that the judge below had correctly ruled.

On March 14, 2000, the Illinois Appellate Court granted appellate counsel's motion to

6

withdraw and, further, denied Petitioner's appeal. The Court noted that successive post-conviction proceedings were prohibited unless: 1) the initial proceedings were deficient in some fundamental way; or 2) when fundamental fairness so requires. The Appellate Court found that neither of these conditions were met, nor could Petitioner overcome the procedural bars to his claims. The Court thus affirmed the judgment of the Circuit Court.

Petitioner petitioned the Illinois Supreme Court for leave to appeal this decision, but that motion was denied on October 10, 2000.

On November 29, 2000, Petitioner filed a petition for writ of habeas corpus in this Court. In his petition before this Court, Petitioner raises three issues: 1) ineffective assistance of trial counsel; 2) ineffective assistance of appellate counsel; and 3) the evidence was not sufficient to prove he committed the underlying crime of first degree murder.

On September 28, 2001, we entered an order dismissing Petitioner's petition for habeas corpus for his failure, in our view, to file the instant petition within the one year statute of limitations required by the Antiterrorism and Effective Death Penalty Act. The Seventh Circuit Court of Appeals later vacated our September 28, 2001 judgment pursuant to the holding in *Smith v. Walls*, 276 F.3d 340 (7th Cir. 2002), and remanded the case for further proceedings. Respondent then filed his response to the habeas corpus petition, and Petitioner later filed a reply brief.

## DISCUSSION

Federal courts may issue a writ of habeas corpus if a Petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2245(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v.*

*Illinois Dept. of Corrections,* 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can

grant habeas relief only when there is a violation of federal statutory or constitutional law.").

The federal courts may not grant habeas relief under Section 2254 unless the state court's

judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a federal court may review the merits of a habeas petition, a Petitioner must: (1)

exhaust all remedies available in state courts; and (2) fairly present any federal claims in state

court first, or risk procedural default. *See Chambers v. McCaughtry,* 264 F.3d 732, 737 (7th Cir.

2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see*

*also Bocian v. Godinez,* 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must

present his federal constitutional claims initially to the state courts in order to give the state 'the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"

*McGowan v. Miller,* 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry,* 513 U.S.

364, 365 (1995)).

A Petitioner has exhausted his state court remedies "by either (a) providing the highest

court in the state a fair opportunity to consider the constitutional issue, or (b) having no further

available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth,*

778 F.2d 1215, 1219 (7th Cir. 1985).

In this case, exhaustion is not an issue. Respondent concedes that Petitioner has

exhausted his state court remedies for purposes of federal habeas review because he has no

8

further avenues in state court through which to challenge his conviction. We now turn to the issue of procedural default.

## I. **Procedural Default**

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the Petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the Petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996). In Illinois, a habeas Petitioner is required to raise all arguments before the Illinois Supreme Court, even though the Court has discretionary control over its docket. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999).

### A. **Ineffective Assistance of Trial Counsel**

Petitioner raises a series of ineffective assistance of counsel claims. Petitioner raises five issues of ineffective assistance of trial counsel, including: a) trial counsel's failure to move to suppress an inculpatory statement; b) trial counsel's concession of his guilt; c) trial counsel's presentation of a defense that prejudiced his guilt and, in essence, amounted to no defense at all; d) trial counsel's elicitation of prejudicial evidence; and e) trial counsel's failure to explore any type of negotiated plea.

The first issue that Petitioner raises, trial counsel's failure to move to suppress an inculpatory statement is procedurally defaulted because the Illinois Appellate Court rejected Petitioner's claim pursuant to an adequate and independent state procedural ground. When

9

looking at a claim raised during a habeas proceeding, it is not enough that a Petitioner sought a review. He must do so in a manner that properly falls within a State's law and in the manner set out by the State. *See Hogan v. McBride*, 74 F.3d 144, 146-47 (7th Cir. 1996). A Petitioner must present his arguments in the way, and at the time, that State law requires in order to avoid forfeiture of his claims. *See Moleterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997). Failure to do so "is an independent state ground . . . barring review in federal court." *Hogan*, 74 F.3d at 146-147; *see also Jenkins*, 8 F.3d at 507.

In this action, Petitioner did not properly present the claim in the manner required under Illinois law. Petitioner first raised the issue of trial counsel's failure to move to suppress an inculpatory statement in his second post-conviction petition. The Illinois Appellate Court rejected that argument and did so by noting that the Illinois Post-Conviction Act (725 ILCS 5/122-3) contemplated only the filing of one post-conviction petition. The Illinois Appellate Court held that Illinois courts only allow a second or successive petition if specific exceptions are met and, in this case, Petitioner did not meet the exceptions necessary to overcome the procedural bars to allow a second petition. Thus, Petitioner did not meet the Illinois procedural requirements, and Petitioner cannot represent to this Court that he properly sought review in the Illinois courts. For these reasons, Petitioner's first ground of ineffective assistance of trial counsel is procedurally defaulted.

Petitioner's other claims of ineffective assistance of trial counsel are also procedurally defaulted because they were never presented to the Illinois courts. The complete failure of a Petitioner to present his or her claims to the state courts serves to bar federal review. *Rodriguez*, 63 F.3d at 55. In order to preserve notions of federal-state comity, the United States Supreme

Court has mandated that fair presentment of an issue to the state courts is a precondition to federal habeas relief. *Rose v. Lundy*, 455 U.S. 509, 515 (1982). When a "claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court," that claim is procedurally defaulted. *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied*, 508 U.S. 962 (1993); *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999). The remaining claims of ineffective assistance of trial counsel raised in this habeas petition were not raised by Petitioner on direct appeal, post-conviction or even in a second improperly filed post-conviction petition. Indeed, they are presented to this Court for the first time and such presentation is improper. Therefore, these remaining ineffective assistance of trial counsel claims also are procedurally defaulted.

## B.     Ineffective Assistance of Appellate Counsel

Petitioner's second ground for habeas relief is that he received ineffective assistance of appellate counsel. Petitioner maintains that appellate counsel failed to raise the ineffectiveness of trial counsel on appeal. Petitioner raises five grounds of ineffective assistance of appellate counsel. These include failure to raise: a) trial counsel's failure to suppress a custodial statement; b) trial counsel's concession of his guilt; c) trial counsel's presentation of a defense that prejudiced his guilt and, in essence, amounted to no defense at all; d) trial counsel's elicitation of prejudicial evidence; and e) trial counsel's failure to explore any type of negotiated plea. We find that all of these claims of ineffective assistance of appellate counsel are procedurally defaulted.

Petitioner failed to raise four of these claims ((b)-(e), above) before the Illinois Courts previously. Although Petitioner did raise some claims of ineffective appellate counsel in his state

11

court proceedings, these claims were not the specific claims raised here, and it is not sufficient that somewhat similar claims were raised. *See Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). The failure of a Petitioner to present his or her claims to the state courts serves to bar federal review. *Rodriguez*, 63 F.3d at 55. Therefore, Petitioner's claims (b)-(e) of ineffective assistance of appellate counsel are procedurally defaulted because they were not properly presented to the Illinois courts.

As for Petitioner's claim (a), appellate counsel's alleged failure to raise trial counsel's failure to suppress a custodial statement, we also find that this claim is procedurally defaulted. Petitioner, conceivably raised this issue in his second post-conviction petition, when he raised a claim regarding trial counsel's ineffectiveness for failing to move to suppress the custodial statement and then raised a general claim of appellate counsel's ineffectiveness for failing to raise trial counsel's ineffectiveness. However, this claim is procedurally defaulted based on the doctrine of independent and adequate state grounds as mentioned above.

Specifically, Petitioner raised this issue for the first time in his second post-conviction petition. The Illinois Appellate Court rejected that argument and did so by noting that the Illinois Post-Conviction Act contemplated the filing of only one post-conviction petition. Although Illinois courts allow for a second or successive petition if certain conditions are met, the Illinois Appellate Court held that Petitioner did not meet these exceptions. Therefore, Petitioner's claim of ineffective assistance of appellate counsel for failing to raise trial counsel's failure to suppress a custodial statement is procedurally defaulted because he did not present it to the State courts in the manner required under Illinois law.

## C.    Cause And Prejudice

A federal court may nonetheless address the merits of a procedurally defaulted claim if the Petitioner can establish cause and prejudice that would excuse it or, alternatively, establish that he fits within the miscarriage of justice exception to the cause and prejudice rule. *Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977). Beginning with the cause and prejudice standard, the Supreme Court has interpreted "cause" under this test to be something external to the Petitioner which is both beyond his control and which cannot be fairly attributed to him. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to establish prejudice, the Petitioner "must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

In this case, Petitioner has not persuaded us that cause and prejudice exist so as to excuse the operation of procedural default in regard to these claims. Petitioner was able to adequately raise claims in his direct appeal and in the first post-conviction petition, but he gives no reasons as to why these defaulted claims were not raised in the State courts in the manner required by the State courts. We find that Petitioner has not offered any sufficient external considerations that explain why he was able to raise some claims sufficiently, but not others. Moreover, although Petitioner makes some general allegations that he was prejudiced, he has not convinced us that the alleged errors so "infected his trial [or appeal] with error of constitutional dimensions." We conclude that Petitioner has not established cause and prejudice for his default. Although Petitioner has failed to establish cause and prejudice to excuse his procedural default, he can still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception.

13

This exception is limited to those extraordinary cases in which the Petitioner is actually innocent of the crime for which he is imprisoned. *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). Therefore, it requires a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional claim. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992). The miscarriage of justice exception applies only if the Petitioner can demonstrate that it is more likely than not that no reasonable fact finder would have convicted him in the absence of the alleged defect in the state court proceedings. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

We find that Petitioner has not shown that this is the extraordinary instance where a fundamental miscarriage of justice has occurred and where a constitutional violation has probably resulted in a conviction of one who is actually innocent of the crime in question. *See, Coleman*, 501 U.S. at 748. There is simply no evidence of Petitioner's innocence. Petitioner signed a statement admitting his guilt and further testified at trial that he kicked and punched the victim, which ultimately resulted in his death. Therefore, Petitioner is not entitled to the "miscarriage of justice" exception.

Accordingly, Petitioner's claims of ineffective assistance of trial and appellate counsel are procedurally defaulted and are barred from federal habeas review.

It is worth noting that, even if we were to reach the merits of Petitioner's ineffective assistance of counsel claims, Petitioner is not entitled to habeas relief on these claims. The standard for reviewing a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-prong analysis for determining ineffectiveness of counsel: 1) a showing that counsel's performance was deficient; and 2) a

14

showing that the deficient performance prejudiced the defendant. *Id.* at 678.

In order to prevail on his claim of ineffectiveness under the first prong of the *Strickland* test, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* In reviewing the challenged conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To satisfy the prejudice prong of the *Strickland* test, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* This Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* Rather, "[i]f it is easier to dispose of an ineffective assistance of counsel claim based on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Id.*

In this case, Petitioner has not shown that his counsel's performance fell below an objective standard of reasonableness. Moreover, there has been no showing that there is a reasonable probability that, but for counsel's alleged errors, the outcome of the court proceedings would have been any different. As mentioned above, Petitioner admitted his guilt in a written statement and further testified at trial that he kicked and punched the victim, which ultimately resulted in his death. Thus, there is no reasonable probability that, but for counsel's alleged errors, the outcome of the court proceedings would have been any different.

For all of these reasons, Petitioner's claims of ineffective assistance of counsel fail.

## II.     Merits of the Claim Properly Presented

Based on the discussion above, Petitioner has properly preserved the claim of

15

insufficiency of the evidence in his habeas petition. Title 28, United States Code, Section 2254(d) governs the consideration of any claim adjudicated by a state court on its merits. Under that statute, we may grant habeas relief only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(2)(1). Under subsection (d)(2), habeas relief is possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), attempted to clarify the applicable standard of review within the meaning of section 2254. The Court noted that the Act does not explicitly prescribe a recognizable standard of review for applying either of the statutory clauses. *Id.* at 385. Recognizing the need for further clarification and direction to lower courts, the Supreme Court concluded that the "[the Act] plainly sought to ensure a level of 'deference to the determinations of state courts,' as long as those decisions do not conflict with federal law or apply federal law in an unreasonable way." *Id.* at 376. Additionally, the Supreme Court determined that, in passing the statute, "Congress wished to curb delays, to prevent 'retrials' on federal habeas petitions and to give effect to state convictions to the extent possible under the law. When federal courts are able to fulfill these goals within the bounds of the law, [the statute] instructs them to do so." *Id.* Therefore, this Court is directed to apply a deferential review of the state court decision unless it is determined that the state court violated federal law.

Petitioner argues that there was not sufficient evidence to prove that he committed the crime of which he was convicted. Specifically, Petitioner argues that the evidence at trial was

16

inconsistent with the finding that Petitioner committed first degree murder when the evidence at trial would have been consistent with a finding of involuntary manslaughter, as the requisite intent for a finding of murder was not shown. This argument is without merit.

In order to prove that the evidence was constitutionally insufficient to sustain the conviction, Petitioner must demonstrate that, "viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The Illinois Appellate Court for the First District applied this standard when it thoroughly and completely examined Petitioner's claim. The Appellate Court noted that upon a sufficiency of the evidence claim, the inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The Appellate Court, citing *People v. Brisbon*, 106 Ill.2d 342, 478 N.E.2d 402 (1985), further noted that a conviction will not be set aside unless the evidence is so unsatisfactory as to create a reasonable doubt of the defendant's guilt. The Appellate Court concluded that the trier of fact is in the best position to judge the credibility of the witnesses, to determine the weight to be accorded their testimony and to draw inferences from the testimony. *People v. Jimerson*, 127 Ill.2d 12, 43, 535 N.E.2d 889 (1989).

Upon reviewing the evidence in Petitioner's case, the Illinois Appellate Court found that there was sufficient evidence to show the requisite intent for first degree murder. The Court found that Petitioner's argument, that he was intoxicated at the time of the beating, was not sufficient reason that he could not have formed the requisite intent for the crime. The Court noted that the mere evidence of some intoxication is insufficient to negate the requisite intent,

17

and the burden is on the Petitioner to establish that his condition was such as to render him wholly incapable of forming such intent.

The Illinois Appellate Court noted that Petitioner had been able to discuss the episode with the arresting officer. Furthermore, the Court found that State had shown intent to kill or that Petitioner had acted with the knowledge that his actions created a strong probability of death or probable harm based on his statements following the attack. The Court cited evidence that Petitioner had kicked the victim so hard that it caused his foot to swell. Therefore, the Appellate Court used the proper standard in reaching its conclusion as it relied upon *Brisbon*, and *People v. Collins*, 106 Ill.2d 237, 478 N.E. 2d 267 (1985), in which the Illinois Supreme Court relied upon the United States Supreme Court's decision in *Jackson v. Virgina*, 443 U.S. 307, 319 (1979).

Petitioner supports his claim by arguing that he used a prodigious amount of alcohol and recreational drugs prior to the attack and that he panicked when he saw the victim. These assertions are clearly evidentiary questions that are properly within the purview of the trier of fact. Without offering any new evidence or facts to support his petition, Petitioner is simply asking this Court to overturn the decision of the Illinois courts and reach a new conclusion. Nothing has changed since those determinations were made. Petitioner is merely asking this Court to substitute its judgment for that of the Illinois courts and to place its own factual analysis in place of the Illinois courts. This Court cannot do this.

Petitioner also cites a series of Illinois Appellate Court cases wherein Appellate Courts reversed or reduced convictions to lesser offenses. These cases cannot give Petitioner the relief he seeks. In each of those cases cited (*People v. Gresham*, 78 Ill.App.3d 103, 398 NE. 2d 398 (3rd Dist. 1979); *People v. Hawkins*, 296 Ill.App.3d 830, 696 N.E.2d 16 (1st Dist. 1998); *People v.*

18

*Holmes*, 246 Ill.App.3d 179, 616 N.E.2d 1000 (3rd Dist. 1993); *People v. Collins*, 213 Ill.App.3d 818, 572 N.E.2d 1005 (1st Dist. 1991)), the decision rested on the specific facts of the case. Petitioner certainly cannot find relief based upon the unique facts of another crime.

In sum, we find that the state court conclusion is consistent with, and a reasonable application of, federal law. Therefore, we deny Petitioner's claim that the evidence at his trial was constitutionally insufficient to prove him guilty.

## CONCLUSION

For the foregoing reasons, we deny the § 2254 petition for a writ of habeas corpus brought by Petitioner Edgar Villatoro. This is a final and appealable order. This case is terminated.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: June 18, 2004

19

# United States District Court
## Northern District of Illinois
**Eastern Division**

U.S.A. ex rel Villatoro

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 00 C 7519

Kenneth Br. Briley

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■     Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that we deny [1-1] the section 2254 petition for a writ of habeas corpus brought by petitioner Edgar Villatoro. This is a final and appealable order. This case is terminated.

Michael W. Dobbins, Clerk of Court

Tresa S. Abraham, Deputy Clerk

Date: 6/18/2004